# Third District Court of Appeal

## State of Florida

Opinion filed September 24, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2000
Lower Tribunal Nos. 13-1083, 13-1084
_____

**David Gootee and Marisa Gootee,**
Appellants,

vs.

**School Board of Monroe County, Florida,**
Appellee.

An Appeal from a Final Order of the School Board of Monroe County, Florida.

Gene Reibman (Plantation); Robert K. Michael (Tampa), for appellants.

Vernis & Bowling of Florida Keys, and Scott C. Black and Theron C. Simmons (Islamorada), for appellee.

Before SALTER, FERNANDEZ and LOGUE, JJ.

SALTER, J.

David and Marisa Gootee (the "Teachers") appeal a final order of the School Board of Monroe County ("School Board") terminating the Teachers' employment. The School Board's final order allowed all ten exceptions taken by the School Board from the administrative law judge's recommended order following a single-day administrative hearing. We affirm the School Board's final order.

I.     Facts and Proceedings Below

The Teachers taught cosmetology to high school students at a public high school in Key West. Both signed professional services contracts as salaried certificated teachers for each designated school year. In 2001, the then-director of vocational education asked the Teachers to teach adult education students as well as the regularly-enrolled high school students. The director told them that the adult education students would attend class during the regular school day rather than at night, and that the Teachers would be paid an additional three hours per day for the extra work. The adult education program was administered separately, and the Teachers did not sign a professional services contract for the hourly adult education instruction.

From 2001 through 2007, the Teachers filed electronic timesheets. From 2007 through October 2009, the Teachers filed paper timesheets to substantiate the

2

additional pay. The timesheets were signed by the Teachers' supervisor, the supervisor's secretary, and the interim director for adult education.

In September 2009, the interim adult education director became the permanent director of the adult education program, at which point he gained access to the School Board's master schedule. He reviewed the class schedules at the high school and realized that the Teachers' time sheets for their high school classes showed an overlap[1] with their hours reported for adult education contract pay. The director then met with the Teachers about the overlapping compensation and later stopped the payments. Thereafter, after consultation with the superintendent of schools for Monroe County, the adult education director suspended the Teachers from their jobs.

In January 2010, the superintendent notified the Teachers that they were violating School Board policy by "preparing and submitting false time reports for additional compensation for which [they] were already being compensated under the Teachers' School Board contract." The School Board filed an administrative complaint alleging that the Teachers had: (1) prepared false timesheets for identical

---

[1] The timesheets submitted for the Teachers' adult education classes showed a time in of 8:30 a.m. and a time out of 3:45 p.m., with a maximum of three hours claimed for those classes. The Teachers did not claim adult education hourly pay during sick days, personal days, or other absences. Those "time in" and "time out" times marked the starting and ending times, however, for their normal school days as salaried high school vocational teachers. The three adult education hours overlapped with their regular high school teaching hours.

and overlapping work; (2) submitted false timesheets for additional hours not worked; (3) received additional compensation for work that had already been paid; and (4) exposed the School Board to liability for submission of false time sheets in connection with student access to "Perkins funds."[2]

The School Board alleged that the Teachers' conduct violated School Board Policy 3210(22) [Standards of Ethical Conduct; staff members shall not submit "fraudulent information on any document in connection with professional activities"], section 1012.795, Florida Statutes (2010), and Florida Administrative Code Rule 6B-1.006 (2010).[3]

The cases against the Teachers were heard in August 2013, and the administrative law judge ("ALJ") issued a recommended order in November 2013. The ALJ concluded that the School Board had failed to prove that the Teachers' time entries were false or inaccurate and that the Teachers had acted with the intent to deceive. The recommended order proposed the dismissal of the School Board's complaints, reinstatement of the Teachers to their employment, and an award of any lost salary and benefits.

The School Board filed ten separate and detailed exceptions to the recommended order. In July 2014, the School Board issued its final order

---

[2] See 20 U.S.C. §§ 2301-2415.

[3] This rule has since been renumbered as Florida Administrative Code Rule 6A-10.081.

accepting each of the exceptions, modifying the ALJ's recommended order, and upholding the termination of the Teachers' employment. This appeal followed.

II.    Analysis

The salient facts are undisputed. The parties differ sharply on the legal consequences flowing from those facts. The School Board was obligated to afford the presumption of correctness to the findings of fact by the ALJ that are supported by competent substantial evidence. Dunham v. Highlands Cnty. Sch. Bd., 652 So. 2d 894 (Fla. 2d DCA 1995). But the School Board's authority to reject or modify the ALJ's recommended order regarding issues of law and the application of agency rules is not confined by any such presumption. Section 120.57(1)(*l*), Florida Statutes (2014), sets forth these standards for the School Board's review of the ALJ's recommended order:

> The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction. When rejecting or modifying such conclusion of law or interpretation of administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence

5

or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action.

With respect to the School Board's ten exceptions to the ALJ's recommended order, the School Board was required to, and did, rule explicitly on each exception after a review of the complete record. See Mas v. Miami-Dade Cnty. Sch. Bd., 26 So. 3d 73 (Fla. 3d DCA 2010).

Our own review of the resulting final administrative order is governed by section 120.68, Florida Statutes (2014). We find that the exceptions were well taken and based upon the record. The Teachers were receiving 10.5 hours of compensation for working a 7.5-hour school day, and the School Board (as opposed to the former director of vocational education) never consented to, or acquiesced in, the submission of the overlapping time records and requests for payment. The Teachers' defense amounts to an argument that the submission of false time records (to support payments of approximately $192,600.00 for the adult education hours) is not a dishonest professional act if a supervisor has condoned it.

Simply stated, there is no such exception to the School Board's Standards of Ethical Conduct or the State Board of Education's Principles of Professional Conduct for the Education Profession in Florida, Rule 6A-10.081(5)(h). And there is no evidence in the record, nor is there any finding proposed by the ALJ, that the

6

arrangement for two paychecks for a single 7.5-hour, regular high school day was ever approved or condoned by the School Board. The professional services contracts signed by the Teachers for their salaried high school teaching stated explicitly that "[n]o person, officer or employee may modify the provisions of this agreement or make any other contract with the Teacher for an [sic] on behalf of the School Board without express ratification by the School Board."[4]

III.    Conclusion

This result seems harsh in the sense that no one has questioned the quality of the instruction provided by the Teachers, and it is clear that a supervisor—albeit an equally or even more culpable supervisor—facilitated the arrangement. Nonetheless, the School Board's legal authorities, exceptions, and final order are entirely correct. The supervisor's purported authorization to the Teachers to falsify and submit an official school record, and to realize a financial benefit from those acts, did not immunize the Teacher's misconduct.

Affirmed.

---

[4] Professional Service Contract of Employment for Instructional Personnel of the Public Schools, Form 1-PS (Rev. 9/1/84), paragraph 14, as entered into the administrative record for the 2004-05 school year. The same form, with annual adjustments that are not pertinent here, was in evidence for the other years at issue in the consolidated cases.